UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
UNITED STATES OF AMERICA,                 )
                                          )   Case No. C16-0985RSL
                 Plaintiff,               )
     v.                                   )
                                          )   ORDER REGARDING CROSS-
WILLIAM P. SCHMIDT, *et al.*,             )   MOTIONS FOR SUMMARY
                                          )   JUDGMENT
                 Defendants.              )
_____)

This matter comes before the Court on the "United States of America's Motion for Summary Judgment Against William P. Schmidt, Sufian Hamad, and Riverton Holding, LLC" (Dkt. # 48) and "Defendant Sufian Hamad and Riverton Holding, LLC's 2nd Motion for Summary Judgment" (Dkt. # 50). On June 27, 2016, the United States filed this lawsuit seeking to foreclose on federal tax liens on a parcel of real property located at 4010 S. 130th Street, Tukwila, WA 98168 (the "4010 Property").[1] Defendant Schmidt, who owned the property until 2011, has not paid federal taxes since 2001. In October 2010, the United States made its first assessment against him for the unpaid taxes, penalties, and interest. After the assessments began but before federal tax liens were recorded, Mr. Schmidt conveyed his interest in the 4010 Property to defendant Sufian Hamad, who subsequently transferred it to his wholly-owned company, Riverton Holding, LLC. The United States argues that its assessments give it a priority interest in the 4010 Property because the putative purchasers did not pay adequate and full

---

[1] The property is also known as 12924 E. Marginal Way S., Tukwila, WA 98168.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT

consideration for the property and/or that the transfer is invalid under the Uniform Fraudulent Transfer Act, RCW 19.40.041. Both the United States and the Hamad defendants seek summary judgment in their favor.

Mr. Schmidt has not responded to the United States' motion for summary judgment against him. Although Mr. Hamad summarily disputes the procedures used to assess the tax liabilities against Mr. Schmidt and the amounts claimed, he offers no evidence to dispute the records showing that notice was sent or to rebut the presumption of correctness that attaches to the assessments. See Huff v. U.S., 10 F.3d 1440, 1445 (9th Cir. 1993). In addition, Mr. Hamad and Riverton Holding lack standing to challenge an assessment made against a third-party. Al-Kim, Inc. v. U.S., 650 F.2d 944, 947 (9th Cir. 1979) ("Neither the Internal Revenue Code nor the decisions of this court support any right of third parties to contest the merits of a tax assessment."). The Court therefore finds that defendant William P. Schmidt is indebted to the United States in the amount of $660,428.38 as of June 20, 2016, less any subsequent payments or credits, plus interest and other statutory additions as provided by law. The remaining question is whether the 4010 Property can be seized to pay the outstanding liability. The answer to that question depends on (a) whether Mr. Hamad and/or Riverton Holding purchased the property from Mr. Schmidt for adequate and full consideration in money or money's worth[2] and (b) whether Mr. Hamad and/or Riverton Holding purchased the property in good faith and for reasonably equivalent value.[3]

---

[2] Pursuant to 26 U.S.C. § 6321 and § 6322, the United States obtains a lien on all property belonging to the delinquent taxpayer at the time the assessment of tax liability is made. The lien is not valid against a purchaser, however, unless and until the lien is recorded. 26 U.S.C. § 6323(a). A "purchaser" is defined as one "who, for adequate and full consideration in money or money's worth, acquires an interest . . . in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6).

[3] The Washington Uniform Fraudulent Transfer Act ("UFTA") makes voidable any transfer of property from a debtor with actual intent to hinder, delay, or defraud his creditor. RCW 19.40.041(1)(a). The party seeking to avoid a transfer under UFTA has the burden of proving actual intent to defraud by

1    Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

//

//

---

clear and satisfactory evidence. Mika v. JBC Entm't Holdings, Inc., 195 Wn. App. 1052, *4 (2016). A transfer that otherwise satisfies the requirements of RCW 19.40.041(1) is not voidable, however, if the transferee shows that he "took in good faith and for a reasonably equivalent value." RCW 19.40.081(1). See 27 Wash. Prac. § 5.146(b); In re Consolidated Meridian Funds, 497 B.R. 263, 268 (W.D. Wash. 2013).

    The United States cites Thompson v. Hanson, 168 Wn.2d 738, 749 (2009), for the proposition that Mr. Hamad's good faith is irrelevant. The Thompson court was asked to determine whether a creditor must show that the transferee, as opposed to the transferor, acted with an intent to hinder, delay, or defraud the transferor's creditors. It answered in the negative, which is consistent with the language of the statute. Thus, the creditor need prove only that the debtor had fraudulent intent. But the statute clearly provides a defense for innocent purchasers in RCW 19.40.081(1). As pointed out in the Thompson concurrence, the issue of whether the transferee acted in good faith - on which the transferee would have the burden of proof - was not at issue and had not been resolved by the trial court.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[4] the Court finds that there are issues of credibility, knowledge, and intent that preclude the entry of judgment as a matter of law regarding enforcement of the lien on the 4010 Property and that the parties' sweeping arguments regarding limitations periods and laches are wholly unpersuasive.

Mr. Schmidt and Mr. Hamad have known each other for over twenty years. They met when Mr. Hamad was an employee of U.S. Bank where Mr. Schmidt sought a loan to purchase property. In 2001, Mr. Hamad started developing real estate, buying land, designing and constructing buildings, and renting them out. Mr. Schmidt, who is an iron worker, taught Mr. Hamad to weld. The two men worked together on a number of projects through the years.

In 1995, Mr. Schmidt purchased the 4010 Property and another piece of property located at 13001 41st Avenue South, Tukwila, WA 98168 (the "13001 Property"). He used the 4010 Property as his residence and workshop and rented units in the building to various commercial tenants. The 13001 Property was purchased as an investment: Mr. Schmidt worked to remodel the property between his ironworker jobs.

Mr. Schmidt stopped filing federal income tax returns in or around 2001. Ten or twelve years ago, he became interested in certain fringe alternative theories regarding, among other things, the 14th Amendment, the demise of the gold standard, and the jurisdiction of various taxing authorities. Mr. Schmidt began attending seminars and apparently became convinced that he should take steps to divest himself of ownership of assets while at the same time retaining control over their beneficial use. In June 2006, Mr. Schmidt signed a contract and declaration of trust purporting to place certain unidentified property into a trust created for his own benefit.

---

[4] Plaintiff's request to strike the Declaration of Gerald Robison (Dkt. # 54-2) is GRANTED: defendants' failure to identify him as a witness regarding the intent of the parties in drafting the purchase and sale agreement is not justified or harmless. The Court has considered defendants' overlength motion in its entirety. Plaintiff's request to strike Dkt. # 50-17 and Dkt. # 50-32 because they were not disclosed in discovery is DENIED. The Court reserves ruling on whether the summary charts can be admitted at trial.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT                -4-

Dkt. # 48-3 at 5-14 (the schedules identifying the property placed in the trust were not submitted).

The 13001 Property contained a single family residence and a dilapidated four-car garage. In July 2006, the City of Tukwila issued a final demolition order regarding the garage structure, but Mr. Schmidt did not have the funds to comply and was facing daily penalties. Mr. Schmidt approached Mr. Hamad about becoming a co-owner of the property. He offered Mr. Hamad the portion on which the garage stood, while Mr. Schmidt would retain ownership of the remaining two-thirds. Mr. Schmidt calculated the sale price of $30,000 by dividing the assessed value of the land ($90,000) by three. Mr. Hamad agreed to pay $30,000, but negotiated a reduction based on whatever fees and penalties the City of Tukwila would assess (which the parties estimated to be $15,000). The plan was that Mr. Hamad would fund the demolition of the existing garage and construct a new garage with a workshop on top. For his part, Mr. Schmidt hoped to avoid further penalties from the City and thought he could use the $15,000 he received in the deal to pay off his federal tax liability.

Mr. Hamad was aware that Mr. Schmidt "was into the whole trust thing" and believed that the 13001 Property was held by a personal trust. Dkt. # 48-2 at 120. At Mr. Schmidt's request, the transfer of an interest in the 13001 Property would involve the creation of a new trust, the 13001 Land Trust, through which Mr. Schmidt's Iron Man Trust would retain a 2/3 interest and Mr. Hamad's Baumeister, LLC, would hold a 1/3 interest. Mr. Hamad paid the $15,000 purchase price in three installments, the last of which was dated October 3, 2006. Later that month, the parties entered into a Co-Venture Agreement. The agreement promised the formation of a land trust, set forth the basic covenants of the parties, and included a diagram showing the intended division of the property. Dkt. # 48-4 at 2-3. In January 2007, the parties entered into a purchase and sale agreement, and Mr. Hamad hired an escrow agent to close the sale. Dkt. # 48-4 at 23-36. A statutory warranty deed was recorded on February 12, 2007. Dkt. # 16-2 at 5. The deed specifies a sales price of $15,000. When Mr. Hamad submitted his

demolition and building plans to the City of Tukwila, it waived the fees and penalties that had accrued. Mr. Hamad paid the $15,000 that had been withheld to Mr. Schmidt.

The United States points out that there are a number of problems with the documents related to the sale of 1/3 of the 13001 Property to Mr. Hamad. For instance, the Co-Venture Agreement was between Iron Man Trust and Baumeister, LLC, but there is no indication that Iron Man Trust ever had a recorded interest in the 13001 Property. The essential terms of the purchase and sale agreement are spread over various documents, and it is not clear whether the 13001 Land Trust ever came into existence. In addition, Mr. Hamad failed to obtain a title report to determine whether there were any existing encumbrances on the property and waited until February 2007 to record his own interest in the property. The delay in recording proved disastrous for Mr. Hamad. At the same time he was investing $150,000-$170,000 in the development of the new garage/workshop structure on the 13001 Property, Mr. Schmidt was encumbering the property with a $240,000 mortgage and Deed of Trust, dated October 27, 2006.[5]

Mr. Hamad learned about the mortgage in 2007. When confronted, Mr. Schmidt assured Mr. Hamad that he would pay off the mortgage and that it would not affect Mr. Hamad's interest in the property. At some point Mr. Schmidt stopped making payments on the mortgage, however, and the trustee under the Deed of Trust posted and recorded a Notice of Trustee's Sale in July 2009. Mr. Hamad again confronted Mr. Schmidt, who promised to make Mr. Hamad whole. Mr. Schmidt and a friend he made at one of the tax seminars he attended attempted to stall or prevent the foreclosure by recording a mishmash of documents, including liens and quit claim deeds, some of which Mr. Hamad signed in one capacity or another. Dkt. # 48-4 at 47; Dkt. # 16-2 at 12-14. Mr. Schmidt hoped that the investment he made with the $240,000 he obtained using the 13001 Property as collateral would double and he would be able to pay back

---

[5] In doing so, Mr. Schmidt breached an express provision of the Co-Venture Agreement.

the loan. By 2011, however, he had to acknowledge that he had lost it all.[6] Mr. Schmidt offered to sell Mr. Hamad the 4010 Property in exchange for a release from all liability related to the 13001 Property. A purchase and sale agreement, dated April 13, 2011, identifies the seller as Mr. Schmidt and the buyer as Riverton Holding. The agreement specifies that both Riverton Holding and Mr. Hamad "waive or release all claims it and he might otherwise have against William Paul Schmidt arising from or related to the prior foreclosure of property located at 13001 - 41st Ave. S., Tukwila, Washington." Dkt. # 50-1 at 10. The recorded deed shows that Mr. Hamad is the grantee. Riverton Holding was not formed until April 2012. Mr. Hamad transferred the 4010 Property to Riverton Holding by quit claim deed on June 18, 2012.

When Mr. Hamad took over the 4010 Property, it was in such bad shape that he did not feel right collecting rent from the commercial tenants or Mr. Schmidt, who lived in one of the units. He has since made extensive repairs and upgrades: he started collecting rent again in August 2012.

In 2013, Mr. Hamad was reviewing a website of foreclosure sales and saw that the 13001 Property was listed. He made a minimum bid of $150,000, which was ultimately accepted. He closed on the 13001 Property in 2014.

Based on this version of events, the trier of fact could reasonably conclude that Mr. Hamad purchased the condemned garage structure on the 13001 Property for value, invested up to $170,000 plus labor in that property, and lost his investment through foreclosure as a direct result of Mr. Schmidt's breach of contract and breach of the duty of good faith and fair dealing. Mr. Hamad accepted the 4010 Property as settlement of his claims related to the 13001 Property, which arguably makes him a purchaser under 26 U.S.C. § 6323(h)(6) and a person who acted in

---

[6] At about the same time, the United States began making assessments against Mr. Schmidt for unpaid taxes, penalties, and interest. The first assessment was made on October 25, 2010. It is not clear whether or when Mr. Hamad knew of the assessments. He was, however, aware that Mr. Schmidt thought taxes were illegal, and he discovered the lien on the 4010 Property when he transferred ownership of the property to Riverton Holding in 2012.

good faith and paid reasonably equivalent value under the UFTA.

The fact finder would not be compelled to find in favor of Mr. Hamad and/or Riverton Holding, however. The United States identifies all sorts of irregularities in the dealings between Mr. Schmidt and Mr. Hamad, as well as various problems in the documentation they used to represent their agreements. For example, the release of claims that Mr. Schmidt's attorney drafted to memorialize the value given in exchange for the 4010 Property incorrectly assumes that the mortgage on the 13001 Property had already been foreclosed and that Mr. Hamad personally, rather than his Baumeister, LLC, held title to the 13001 Property. The United States argues that the errors in the purchase agreement for the 4010 Property mean that Mr. Hamad technically gave nothing in exchange for the property.[7] The United States also points to the facts that Mr. Hamad used a single-asset LLC to take ownership of the 4010 Property and that he may have allowed Mr. Schmidt to collect rents after the sale to support a version of events in which defendants acted in bad faith. Indeed, Mr. Schmidt says that the parties planned to return the property to him eventually and that the use of Riverton Holding to take ownership would facilitate that plan. While this theory is supportable, Mr. Schmidt's credibility is at issue and there are also facts that support a finding of good faith. Issues of credibility, knowledge, and intent must be resolved at trial. If the fact finder believes Mr. Schmidt regarding the nature of the transfer, one could reasonably conclude that the drafting errors and the choice of holding company were intended to assist Mr. Schmidt in avoiding taxes and that Mr. Hamad was not acting in good faith. If, on the other hand, Mr. Hamad is credible, the facts would support a finding that the purchase was for valuable consideration. Neither side is entitled to judgment as a

---

[7] The United States makes no effort to apply Washington's rules of contract interpretation to the purchase and sale agreement. Mr. Hamad has testified regarding the mutual intent of the parties, testimony which is largely supported by the context out of which the agreement arose, the subsequent conduct of the parties, and the reasonableness of his interpretation. See Berg v. Hudesman, 115 Wn.2d 657, 668-69 (1990). The Court will not undertake an analysis that the United States chose not to perform.

matter of law regarding the avoidance of the transfer of the 4010 Property.

For all of the foregoing reasons, the United States' motions for summary judgment (Dkt. # 48) is GRANTED in part. William P. Schmidt is indebted to the United States in the amount of $660,428.38 as of June 20, 2016, less any subsequent payments or credits, plus interest and other statutory additions as provided by law. In all other respects, the cross-motions for summary judgment (Dkt. # 48 and Dkt. # 50) are DENIED. The issue of whether the transfer of the 4010 Property is voidable such that the United States may foreclose its lien on the property will be resolved at trial.

Dated this 19th day of December, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT            -9-