UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

---

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

WILLIAM P. SCHMIDT, *et al.*,

                Defendants.

Case No. C16-0985RSL

MEMORANDUM OF DECISION

---

This matter was heard by the Court in a two day bench trial commencing on January 8, 2018. Plaintiff, the United States of America, filed this lawsuit seeking to foreclose on federal tax liens on a parcel of real property located at 4010 S. 130th Street, Tukwila, WA 98168 (the "4010 Property").[1]

**FINDINGS OF FACT**

By a preponderance of the evidence, the Court finds as follows:

Defendant William P. Schmidt, who owned the 4010 Property until 2011, has not paid federal taxes since 2001. In 2010, the United States made its first assessment against him for the unpaid taxes, penalties, and interest. After the assessments began but before federal tax liens were recorded, Mr. Schmidt conveyed his interest in the 4010 Property to defendant Sufian Hamad, who subsequently transferred it to his wholly-owned company, Riverton Holding, LLC. The United States argues that its assessments give it a priority interest in the 4010 Property

---

[1] The property is also known as 12924 E. Marginal Way S., Tukwila, WA 98168.

MEMORANDUM OF DECISION

because the transfer to Mr. Hamad is voidable under the Uniform Fraudulent Transfer Act, RCW 19.40.011(a) and/or Mr. Hamad did not pay adequate and full consideration for the property and therefore does not qualify for the protections offered by 26 U.S.C. § 6323(a).

Mr. Schmidt and Mr. Hamad have known each other for over twenty years. They met when Mr. Hamad was an employee of U.S. Bank where Mr. Schmidt sought a loan to purchase property. In 2001, Mr. Hamad started developing real estate, buying land, designing and constructing buildings, and renting them out. Mr. Schmidt, who is an iron worker, taught Mr. Hamad to weld. The two men worked together on a number of projects through the years.

In the mid-1990s, Mr. Schmidt purchased the 4010 Property and another parcel located at 13001 41st Avenue South, Tukwila, WA 98168 (the "13001 Property"). The 13001 Property contained a single family residence and a dilapidated four-car garage. In July 2006,[2] the City of Tukwila issued a final demolition order regarding the garage structure, but Mr. Schmidt did not have the funds to comply and was facing daily penalties. Mr. Schmidt offered to sell to Mr. Hamad the third of the property on which the garage stood for one-third of the assessed value of the land ($30,000), with the understanding that Mr. Hamad would fund the demolition of the existing garage and construct a new garage with a workshop on top. Mr. Hamad agreed to pay $30,000, but negotiated a reduction based on whatever fees and penalties the City of Tukwila would assess (which the parties estimated to be $15,000).

From his conversations with Mr. Schmidt, Mr. Hamad believed that the 13001 Property was held by a personal trust. At Mr. Schmidt's request, the transfer of an interest in the 13001 Property would involve the creation of a new trust, the 13001 Land Trust, through which Mr. Schmidt's Iron Man Trust would retain a two-thirds interest and Mr. Hamad's Baumeister, LLC,

---

[2] At some point prior to the events described in this paragraph, Mr. Schmidt became interested in fringe theories regarding, among other things, the 14th Amendment, the demise of the gold standard, and the jurisdiction of various taxing authorities. Mr. Schmidt became convinced that the Internal Revenue Service is a criminal organization and that it made sense to divest himself of ownership of assets while at the same time retaining control over their beneficial use. In June 2006, Mr. Schmidt signed a contract and declaration of trust (the Iron Man Trust) purporting to place certain unidentified property into a trust created for his own benefit.

MEMORANDUM OF DECISION                -2-

would hold a one-third interest. In October 2006, the parties entered into a Co-Venture Agreement. The agreement promised the formation of a land trust, set forth the basic covenants of the parties, and included a diagram showing the intended division of the property. In January 2007, the parties entered into a purchase and sale agreement, and Mr. Hamad hired an escrow agent to close the sale. A statutory warranty deed was recorded on February 12, 2007. The deed identifies Mr. Schmidt as the grantor and Baumeister, LLC, as the grantee. When Mr. Hamad submitted his demolition and building plans to the City of Tukwila, the City waived the fees and penalties that had accrued. Mr. Hamad therefore paid Mr. Schmidt the additional $15,000 that had been withheld from the sale price.

Mr. Hamad set about demolishing the garage structure and building a new garage/workshop on his third of the 13001 property. The four month delay in formalizing and recording his interest proved costly: while Mr. Hamad was putting $150,000-$170,000 into the project, Mr. Schmidt was encumbering the property with a $240,000 mortgage and Deed of Trust, dated October 27, 2006. In doing so, Mr. Schmidt breached an express provision of the Co-Venture Agreement. When Mr. Hamad learned about the mortgage in 2007, he confronted Mr. Schmidt, who assured Mr. Hamad that he would pay off the mortgage and that it would not affect Mr. Hamad's interest in the property. Mr. Schmidt stopped making payments on the mortgage, however, and a Notice of Trustee's Sale was posted in July 2009. Mr. Hamad again confronted Mr. Schmidt, who promised to make Mr. Hamad whole. Mr. Schmidt attempted to stall or prevent the foreclosure by recording a mishmash of documents, including liens and quit claim deeds, some of which Mr. Hamad signed in one capacity or another. Mr. Schmidt hoped that the investment he made with the mortgage proceeds would double and he would be able to pay back the loan.

During this time frame, the United States began making assessments against Mr. Schmidt

for unpaid taxes, penalties, and interest. The first assessment was made in 2010.[3] It is not clear when Mr. Schmidt learned of the assessments or whether Mr. Hamad ever knew of the assessments. Mr. Hamad was, however, aware that Mr. Schmidt thought taxes were illegal.

By 2011, Mr. Schmidt had to acknowledge that he had lost all of the funds he had invested and would not be able to pay down the October 2006 mortgage. Mr. Schmidt offered to sell Mr. Hamad the 4010 Property in exchange for a release from all liability related to the 13001 Property.[4] A purchase and sale agreement was drafted by Mr. Schmidt's lawyer. It is dated April 13, 2011, and identifies the seller as Mr. Schmidt and the buyer as Riverton Holding.[5] The agreement specifies that both Riverton Holding and Mr. Hamad "waive or release all claims it and he might otherwise have against William Paul Schmidt arising from or related to the prior foreclosure of property located at 13001 - 41st Ave. S., Tukwila, Washington."[6] The Real Estate Excise Tax Affidavit states that the transfer was a gift without consideration, a non-taxable event. At Mr. Schmidt's request, Mr. Hamad signed additional documents related to the 13001 Property which purported to transfer the property from the 13001 Land Trust to Mr. Schmidt.

At the time of the transfer, Mr. Hamad had invested approximately $255,000 into the

---

[3] Although the United States alleges in its complaint that the first assessment was made on October 25, 2010, no certificates of assessment or other forms of notice to Mr. Schmidt were admitted into evidence at trial. The notices of federal tax lien in the record reflect that the first assessments were made on February 8, 2010.

[4] In the context of this litigation, Mr. Schmidt has taken the position that the transfer of the 4010 Property to Mr. Hamad was a sham designed to protect the property from the government and that the parties agreed that Mr. Hamad would hold the property in trust for Mr. Schmidt, to be returned at some undisclosed time in some undefined circumstances. Mr. Schmidt is not a credible witness on this point. He has an interest in undoing the transfer, which would effectively discharge much if not all of the debt he owes to the government at no cost to him.

[5] The recorded deed shows that Mr. Hamad is the grantee. Riverton Holding was not formed until April 2012.

[6] Mr. Hamad's interest in the 13001 Property had been held in the name Baumeister, LLC. The 13001 Property had not yet been foreclosed upon.

MEMORANDUM OF DECISION -4-

purchase and development of the 13001 Property. The tax assessment on the 4010 Property was approximately $280,000, but there is no indication that the assessor had evaluated the inside of the 90+ year old building. The retail and residential units were in such bad shape that Mr. Hamad did not feel right collecting rent from the commercial tenants or Mr. Schmidt, who lived in one of the units. The bathroom situation was particularly egregious, and Mr. Hamad set about making some basic repairs and upgrades shortly after the transfer just to make the units habitable. The Court finds that the fair market value of the 4010 Property at the time of transfer was $245,000. This value was calculated by averaging the valuation estimated using the cost and income approaches. The Court adopted the highest and best use analysis, comparables, and methodologies used by plaintiff's expert, Timothy Holzhauer, but made a significant upward adjustment in the anticipated renovation expenses, which in turn increases the calculated investor incentive and lost rents reductions. In particular, the costs associated with the major renovations that were undertaken in 2014, 2015, and 2016 were increased to account for Mr. Hamad's labor at $55,000 per year. Although Mr. Holzhauer recognized that renovation expenses that would be anticipated by a reasonable investor had to be deducted from the potential for income and value after renovation, the labor expenses were not included in Mr. Holzhauer's calculations.

On June 18, 2012, Mr. Hamad transferred the 4010 Property to Riverton Holding by quit claim deed. He then discovered that the United States had placed a tax lien on the property. He unsuccessfully sought to have the tax lien on the 4010 Property removed in April 2013.

At all points during his business transactions with Mr. Schmidt, Mr. Hamad acted at arms length and in good faith.

The Court previously found that Mr. Schmidt is indebted to the United States in the amount of $660,428.38 as of June 20, 2016, less any subsequent payments or credits, plus interest and other statutory additions as provided by law.

MEMORANDUM OF DECISION                -5-

## CONCLUSIONS OF LAW

**A. Uniform Fraudulent Transfer Act, RCW 19.40.011, *et seq*.**

The Washington Uniform Fraudulent Transfer Act ("UFTA") allows a creditor to void a transfer of assets "if the debtor made the transfer . . . :

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

RCW 19.40.041(a).[7]

The United States has not met its burden of showing that Mr. Schmidt transferred the 4010 Property to Mr. Hamad with actual intent to hinder, delay, or defraud the United States' efforts to collect back taxes. Ultimately, this case turns on credibility determinations by the Court. Mr. Schmidt's testimony on this issue is simply not credible. Mr. Hamad's version of events is both credible and consistent with the contemporaneous records. The temporal link between the first assessments in February 2010 and the offer of sale in April 2011 is too weak to justify a finding in plaintiff's favor. Mr. Schmidt had long been under threat of enforcement actions, and it is more probable than not that his offer to transfer the 4010 Property to Mr. Hamad was an effort to resolve the dispute between the two of them than any sudden impulse to avoid tax payments.

Even if, as Mr. Schmidt now claims, he transferred the property to Mr. Hamad in order to

---

[7] All citations to the UFTA are to the version that was in effect prior to July 23, 2017.

avoid paying taxes, the transfer is not voidable because Mr. Hamad has shown that he "took in good faith and for a reasonably equivalent value . . . ." RCW 19.40.081(a). "Value," for purposes of the UFTA, includes securing or satisfying an antecedent debt. RCW 19.40.031(a). The United States argues (1) that Mr. Hamad did not have a claim for damages arising from Mr. Schmidt's unilateral encumbrance of their shared property, (2) that the sale agreement did not properly release any such claim, and (3) that the antecedent debt alleged was not of reasonably equivalent value to the 4010 Property.

There are a number of claims Mr. Hamad could have asserted against Mr. Schmidt when Mr. Schmidt breached the parties' agreement that they would not unilaterally encumber the 13001 Property. A federal court will not, seven years later, engage in the entirely hypothetical exercise of guessing whether Mr. Hamad would have asserted breach of a written contract, breach of an oral contract, quiet title, constructive trust, partial performance, and/or equitable claims or how a court would have evaluated the relevant facts and law. At the time, both parties believed that Mr. Hamad had a valid claim against Mr. Schmidt: there is no indication that Mr. Schmidt would have contested liability, acknowledging as he did that he had no right to encumber the property and had an obligation to make Mr. Hamad whole. The Court has already found that Mr. Hamad was acting in good faith in his dealings with Mr. Schmidt. The Court declines to speculate what would have happened if the parties had held beliefs and taken positions that were diametrically opposed to what they actually believed and did.

The Real Estate Purchase and Sale Agreement drawn up by Mr. Schmidt's attorney undoubtedly contains mistakes and misstatements. Nevertheless, the mutual intent of the parties to exchange the 4010 Property for a release of all claims arising from the loss of the 13001 Property was clear even if the attorney misstated some of the surrounding facts. Under Washington law, reformation is available to bring a writing that is materially at variance with the parties' mutual intent and agreement into conformity with that agreement. See Denaxas v. Sandstone Ct. of Bellevue, LLC, 148 Wn.2d 654, 669 (2003). Had Mr. Hamad reneged on the

MEMORANDUM OF DECISION                -7-

release by arguing, for example, that while he, personally, had waived any claim against Mr. Schmidt, Baumeister LLC retained its ability to sue for the loss of the 13001 Property, Mr. Schmidt would likely have been able to show the mutual intent of the parties at the time of contracting and defeat Baumeister's claim.

Mr. Hamad asserted and Mr. Schmidt believed that the loss of the 13001 Property indebted Mr. Schmidt to Mr. Hamad. The evidence shows that Mr. Hamad's losses were approximately $255,000,[8] a debt he was willing to release in exchange for a property with a fair market value of $245,000. The transfer was in good faith and for a reasonably equivalent value.

**B. Priority of Unrecorded Tax Lien**

Pursuant to 26 U.S.C. § 6321 and § 6322, the United States obtains a lien on all property belonging to a delinquent taxpayer at the time the assessment of tax liability is made. The lien is not valid against a purchaser, however, unless and until the lien is recorded. 26 U.S.C. § 6323(a). The first notice of federal tax lien against the 4010 Property was not recorded until July 7, 2011, after it had been transferred to Mr. Hamad.

A "purchaser," for purposes of § 6323(a), is defined as one "who, for adequate and full consideration in money or money's worth, acquires an interest . . . in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). Mr. Hamad has shown that he is entitled to protection as a "purchaser."

For all of the foregoing reasons, the Clerk of Court is directed to enter judgment against defendant William P. Schmidt and in favor of the United States in the amount of $660,428.38 as of June 20, 2016, less any subsequent payments or credits, plus interest and other statutory additions as provided by law. Judgment shall be entered in favor of defendants Sufian Hamad

---

[8] The United States suggests, without actually arguing, that Mr. Hamad's damages are limited to the amount his actions increased the assessed value of the 13001 Property. There is no such limitation on the type of damages that would have been available to Mr. Hamad in this situation.

MEMORANDUM OF DECISION                -8-

and Riverton Holding, LLC: all claims against them are hereby dismissed. The United States shall issue a certificate of nonattachment regarding the 4010 Property.

Dated this 8th day of February, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge